Albert **BUTTS**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and LaSalle University.**

Civ. A. No. 84–5763.

United States District Court, E.D. Pennsylvania.

Dec. 5, 1984.

---

6. *See* 45 A.L.R.Fed. 871 at 879 and 880 for a list of citations.

Gregory T. Magarity, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiff.

Howard D. Scher, Patrick T. Ryan, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for LaSalle University.

David Bruton, John Chesney, Drinker, Biddle & Reath, Philadelphia, Pa., for National Collegiate Athletic Ass'n.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Plaintiff Albert Butts is six-feet-nine-inches tall, weighs 215 pounds, and has been a prominent member of LaSalle University's basketball team for three years. Now a senior, he would like very much to continue playing basketball for LaSalle this year, and entertains well-founded expectations of ultimate selection in an early round of the NBA draft. Unfortunately, he has been declared ineligible to compete this year, by virtue of NCAA by-law 5–1–(d)–(3), which requires that each year of pre-collegiate basketball competition after age 20 be counted against collegiate eligibility.

Under NCAA rules, each participant has a maximum of four years collegiate eligibility, over a five-year period. After obtaining his high school diploma from Frederick Military Academy in Virginia, and after reaching age 20, Mr. Butts remained at Frederick for an additional year pursuing post-graduate studies so as to improve his academic skills sufficiently to gain entrance to LaSalle; and he played basketball for Frederick during that post-graduate year.

In this action, plaintiff challenges the validity of by-law 5–1–(d)–(3) on constitutional and statutory grounds, and seeks a preliminary injunction against its enforcement by NCAA and LaSalle. Although named as a defendant, LaSalle University agrees with plaintiff and, by cross-claim, also seeks declaratory and injunctive relief against the NCAA. Because of the need for a very prompt decision (the basketball season is now under way), my conclusions will be set forth in summary form.

Essentially, plaintiff contends that the by-law is invalid because it discriminates on the basis of age, because it discriminates on the basis of race, and because its adoption and promulgation were such that, as to plaintiff, its enforcement would violate due process of law.

Virtually every contention advanced by plaintiff in this action has been considered, and firmly rejected, by the First Circuit Court of Appeals in *Spath v. NCAA*, 728 F.2d 25 (1984). In the face of this precedent, plaintiff's burden of showing a likelihood of success on the merits is indeed a heavy one. The First Circuit's opinion is persuasive, and I have no reason to suppose that the Court of Appeals for the Third Circuit would reach a different conclusion.

There is one issue presented (somewhat belatedly, in the course of the hearings; the issue was not asserted in plaintiff's Complaint or Motion for Preliminary Injunction) in the present case which was not addressed by the *Spath* court, namely, racial discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Plaintiff has presented

Bureau of Census statistics showing that the number of blacks still in high school at age 20 is some 4 times higher than the number of whites in that category. Thus, it is argued, the by-law undoubtedly has a greater adverse impact upon black athletes than upon whites.

The defendant argues that, before this inference of adverse impact can properly be drawn, some additional refinement of the data is necessary: the statistics do not reveal information about the actual "pool" of would-be college athletes, but merely about the high school population as a whole. There is, however, evidence to the effect that an NCAA by-law relating to academic standards (the 2.0 grade-point average requirement for admission) does have an adverse impact upon black would-be college athletes. And it is reasonable to draw the inference that persons who have trouble meeting the 2.0 academic standard are likely to remain in high school longer than persons of higher academic standard. In short, there is every reason to believe that the actual "pool" of applicants for college athletic programs contains a much higher percentage of blacks over the age of 20 than whites of that age.

For purposes of preliminary injunctive relief, I am satisfied that the plaintiff has shown a strong likelihood of establishing that the by-law in question does have racially disparate impact. That is, for present purposes, I conclude that plaintiff has made out a *prima facie* case under 42 U.S.C. § 2000d. Under that statute, proof of disparate impact suffices to make out a *prima facie* case; it is not necessary to prove actual racial animus. *Guardians Association v. Civil Service Commission,* —— U.S. ——, 103 S.Ct. 3221, p. 3223 n. 2, 77 L.Ed.2d 866 (1983).

But making out a *prima facie* case is only the beginning of the battle. The defendant NCAA has advanced facially legitimate, non-discriminatory reasons for the by-law—reasons which the First Circuit found obviously valid in *Spath, supra,* and which the D.C. Circuit in *Howard v. NCAA,* 510 F.2d 213, 222 (D.C.Cir.1975)

conceded "may be substantial"—and plaintiff therefore bears the burden of proving that the reasons advanced are merely pretextual.

NCAA asserts that the by-law is designed and intended to promote equality of competition among its members at each level so as to prevent college athletics and access to athletic scholarships from being dominated by more mature, older, more experienced players, and to discourage high school students from delaying their entrance into college in order to develop and mature their athletic skills. These are legitimate, and plainly not insubstantial, justifications for the rule. It is not enough for plaintiff to show that the by-law does not necessarily achieve its objectives in every instance, or in every sport. Plaintiff points out that there is no age limit to participation in college athletics. Plaintiff also challenges the validity of the underlying assumption of the by-law, namely, that participating in pre-college athletic competition beyond age 20 actually does enhance athletic skills. Even if I were to agree with all of plaintiff's arguments, however, the fact remains that I am not empowered to second-guess the wisdom of the rule or the merits of the judgments it represents. The issue before me is whether plaintiff has shown a reasonable likelihood of being able to establish that the rule is a mere pretext for racial discrimination. Much as I sympathize with plaintiff's predicament, I cannot, in all honesty, reach that conclusion.

Nor has plaintiff established a likelihood of success in showing that some other, less intrusive, rule would accomplish the stated objects of the present rule. It simply cannot be stated that there is no rational connection between a combination of age and competitive experience, on the one hand, and enhanced ability to compete, on the other.

I am likewise unable to conclude that plaintiff has established a substantial likelihood of success on his age-discrimination claims. Although that statute expressly requires exhaustion of administra-

tive remedies before resort to a federal court, I shall assume, without deciding, that there may be a jurisdictional basis for a grant of preliminary injunctive relief to preclude irreparable harm which might be incurred before an administrative resolution can be obtained. Whether this would require an extraordinarily strong likelihood of success on the merits is perhaps arguable. Whatever the standard, I do not believe plaintiff has met it in this case. It is not plaintiff's age alone that results in his ineligibility under the by-law, it is the fact that, after age 20, he competed in high school basketball. As I understand the pertinent HEW regulations, it is probable that this does not amount to age-discrimination under the statute. Plainly, the maturity and level of athletic skill of the athlete are relevant considerations in determining eligibility; in this context, age is simply a shorthand approximation of physical maturity.

Accordingly, I have reluctantly concluded that plaintiff's Motion for Preliminary Injunctive Relief must be denied. This conclusion renders moot LaSalle's application for declaratory and injunctive relief with respect to another NCAA by-law, 10–(b), which purports to enable the NCAA to discipline a college for permitting an ineligible player to participate, even pursuant to a grant of an injunction by a court. I do agree with LaSalle that the validity of this by-law is dubious indeed, at least in any case in which the NCAA itself was a party to the litigation, and subject to the court's injunctive order. I need not, however, address that issue at this time.

I wish to make very clear that the sole basis for denial of injunctive relief in this case is my conclusion that the plaintiff is unlikely to succeed on the merits. There can be little doubt that plaintiff, LaSalle, and, at least to some extent, Big Five basketball in Philadelphia, will suffer irreparable harm from enforcement of the NCAA by-law. I am likewise convinced that the harm which would flow from granting injunctive relief would be much less than the harm which will result from denying injunctive relief, and that there are no sub-

stantial public policy considerations which weigh in the balance. In short, I am not exercising discretion on the basis of the facts, but I am expressing, essentially, a pure conclusion of law.